UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-10178-GAO

BMO HARRIS BANK N.A.,
Plaintiff,

v.

DANIEL A. POTTER,
Defendant.

OPINION AND ORDER
September 24, 2019

O'TOOLE, D.J.

This suit arises out of the defendant Daniel Potter's alleged default under a settlement agreement. The plaintiff BMO Harris Bank N.A. ("BHB"), claiming to be the assignee of rights under the settlement agreement, contends that Potter breached the agreement by failing to make monthly installment payments as required under its terms. BHB has moved for summary judgment.

**I.      Factual Background**

The following facts are undisputed in the record unless otherwise noted:

On or about June 24, 2014, Daniel Potter entered into a Confidential Settlement Agreement (the "Settlement Agreement" or "Agreement") with General Electric Capital Corporation in the total amount of $200,000 ("Settlement Amount") to resolve a civil action filed in state court. According to the Settlement Agreement, GE Capital and Blue Water HLD Corp. had entered into a series of loan and security agreements by which GE Capital financed Blue Water's purchase of certain commercial use motor vehicles. GE Capital maintained a perfected security interest in the vehicles as first lienholder. Potter, along with another individual, executed two guaranties in connection with GE Capital's financing of Blue Water's purchase. In October 2010, Blue Water

defaulted, and GE Capital brought suit against Potter and the other individual as co-guarantors. The parties mediated the dispute, resulting in the Settlement Agreement.

Under the terms of the Settlement Agreement, Potter was obligated to make the following monthly payments: (1) thirty-six payments of $1,000 per month commencing on June 1, 2014; (2) eighty-three payments of $1,500 per month commencing on June 1, 2017; and (3) one final payment of $39,500 on June 1, 2024. Each payment was due and payable on the first day of each month.

Pursuant to the Agreement, the failure to make any monthly payment

> shall constitute a default of Potter's payment obligations . . . . GE Capital shall provide written notice of default to Potter in the manner and at the address set forth in paragraph 10 of the Agreement. Upon the failure by Potter to cure any Payment Default within ten (10) calendar days of the mailing of written notice of Payment Default . . . , Potter shall be immediately and unconditionally liable for the entire accelerated balance of the Settlement Amount minus any payments made up to and including the date of the [default].

(Aff. of Debb White in Supp. of Mot. for Summ. J. ("White Aff."), Ex. B ¶ 5 (dkt. no. 21-2).)

Under paragraph 10 of the Settlement Agreement, "[a]ll notices required to be given under the Agreement shall be considered complete when mailed via certified mail, postage prepaid, and sent to the following address or such other address as a party may provide to the other in writing." (Id. ¶ 10.) For Potter, notice was to be mailed to his address at 8 Marshall Way, Weston, MA 02493 with a copy to his attorney, Joseph Bodoff of the law firm Rubin and Rudman.

GE Capital subsequently executed a document entitled "Assignment," assigning certain rights to Transportation Truck and Trailer Solutions, LLC, which was "originally a wholly owned company of" GE Capital's Transportation Finance Division. (Suppl. Aff. of Debb White in Supp. of Mot. for Summ. J. ("White Suppl. Aff.") ¶ 7 (dkt. no. 25-1).) Specifically, the Assignment provided:

2

>**General Electric Capital Corporation** ("Assignor") hereby acknowledges and confirms that, effective as of 12:00 a.m. on October 1, 2015, Assignor transfers, assigns, and sets over to **Transportation Truck and Trailer Solutions, LLC**, its successors and assigns ("Assignee") all of the Assignor's right, title and interests in and to the accounts listed below (the "Assigned Accounts"), including without limitation, all documents, loans, leases, security agreements, or other instrument, together with any promissory notes, guaranties, property rights, other instruments related thereto, and other writings in any way relating to the Assigned Accounts (the "Financing Documents"), all property and property rights owned by Assignor in connection with its interests in the Assigned Accounts, and property and property rights held by Assignor as collateral for either or both of the payment and performance of certain obligations under the Financing Documents.

(White Aff. Ex. A.) The only Assigned Account "listed below" on the Assignment is Blue Water Holding Corp. with an Account Number of 2001. (Id.)

On December 1, 2015, BHB purchased the Transportation Finance Division of GE Capital. Subsequently, Transportation Truck and Trailer Solutions executed a document entitled "Transfer Acknowledgment" effective that same date.[1] The Transfer Acknowledgment provided:

>Transportation Truck and Trailer Solutions, LLC, . . . ("Transferor") hereby acknowledges and confirms that effective as of 12:00 a.m. on December 1, 2015, Transferor sells, conveys, assigns, transfers and delivers to BMO Harris Bank N.A., its successors and assigns ("Transferee") and Transferee purchases, acquires and accepts all of Transferor's right, title and interest in, to and under, and assumes any liabilities arising from or related to, the accounts listed below ("the Transferred Accounts"), including without limitation, all documents, loans, leases, security agreements, or other instruments, together with any promissory notes, guaranties, property rights, other instruments related thereto, and other writings in any way relating to the Transferred Account ("the Financing Documents"), all property and property rights owned by Transferor in connection with its interests in the Transferred Accounts, and any property and property rights held by Transferor as

---

[1] Although the document's purported effectiveness date is December 1, 2015, it appears to have been executed on January 29, 2018. The fact that the Transfer Acknowledgement was signed in January 2018 does not necessarily suggest some sort of improper backdating. Rather, it is likely a memorialization of what had occurred through BHB's purchase of the Transportation Finance Division of GE Capital in December 2015 and is "sufficient to establish that in [2015] [the] parties had 'the then present intention to transfer all of their interest.'" See Cadles of Grassy Meadows II, LLC v. MacKinnon, Civil Action No. 91-10432-WGY, 2010 WL 971871, at *2 (D. Mass. Mar. 11, 2010) (quoting Cheswell, Inc. v. Premier Homes & Land Corp., 326 F. Supp. 2d 201, 202 (D. Mass. 2004)).

> collateral solely for either or both the payment and performance of certain obligations under the Financing Documents.

(White Aff. Ex. A.) The only Transferred Account "listed below" on the Transfer Acknowledgement is Blue Water Holding Corp. with an Account Number of 2001.

BHB contends that Potter failed to make his monthly installment payments beginning with the one due July 1, 2016. In support of its contention, BHB relies on an affidavit of one of its litigation specialists and records that BHB maintains in the course of its regularly conducted business activities. One record is an Accounting Balance Sheet that purports to list "payments made on account of the Agreement." (Id. ¶ 3.) The records demonstrate seventeen payments made from July 2014 through June 2016 for a total of $25,000. They show Potter sometimes failed to pay $1,000 for a particular period or periods and subsequently submitted larger payments to cover more than one month. For instance, the records reflect a payment made on August 25, 2015 for $3,000, apparently to cover missing payments for several months preceding that date. Similarly, the records show a payment made on June 11, 2016 for $4,000, which would have covered missed payments for March through June 2016. No payment is reflected after that date.

GE Capital and its successors-in-interest sent several demand letters to Potter at his address listed in the Settlement Agreement. On July 30, 2015, Charles Domestico, then-counsel for GE Capital, sent a letter to Potter via certified mail to his address at 8 Marshall Way in Weston and via first class mail to his attorney, Joseph Bodoff, pointing to Potter's failure to remit payment for June and July 2015. (White Suppl. Aff. ¶ 9; id. Ex. B.) "On February 15, 2016, BHB sent a default letter via certified mail to Potter" at 8 Marshall Way and to Attorney Bodoff. (Id. ¶ 11.) On August 4, 2017, Domestico sent another default letter to Potter via certified mail to his address at 8 Marshall Way and to Attorney Bodoff, pointing to Potter's failure to make the required monthly installment payment on August 1, 2016 and each successive month thereafter. (Id. ¶ 10; id. Ex. C.)

On January 17, 2018, new counsel for the plaintiff sent a new demand letter to Potter at 8 Marshall Way. (Id. ¶ 15; id. Ex. E.) BHB maintains that Potter has defaulted under the terms of the Agreement by failing to make the installment payment due July 1, 2016 and every month thereafter.

Potter tells a slightly different story. He avers he has paid a total of $26,000 to GE Capital, rather than $25,000. (Aff. of Daniel A. Potter ("Potter Aff.") ¶ 6 (dkt. no. 24).) He also claims that his June 2016 check in the amount of $4,000 "was to cover April through July of 2016," making him current under the Settlement Agreement through August 1, 2016. (Id. ¶ 8; see also id. Ex. 1.) He attaches a list of payments to his affidavit that suggests twenty-six monthly payments of $1,000, but he does not provide any explanation for the provenance of the list, nor any underlying documents (e.g., admissible business records) to support it.

With respect to notice, Potter avers that in the summer of 2016 he moved out of his 8 Marshall Way address and "advised Mr. Domestico" that he had moved and that the return address on the payments was his new business address at 368 Hillside Avenue, Needham Heights, Massachusetts. (Id. ¶ 7.) He reports that he did not "receive the mailing that was sent to the 8 Marshall Way address prior to the institution of this action." (Id. ¶ 17.)

## II.  Discussion

In order to prevail on a breach of contract claim under Massachusetts law, BHB must show "the existence of a valid and binding contract, that the defendant breached the contract's terms, and the plaintiff suffered damages as a result of that breach." Scholz v. Goudreau, 901 F.3d 37, 43 (1st Cir. 2018). BHB argues it is entitled to summary judgment because the undisputed facts of record show that Potter entered into a valid Settlement Agreement, that he failed to make the payments he owed under the Agreement, that he did not cure his default within ten days of the

mailing of written default notice, and BHB as the assignee of the Agreement suffered damages in the amount of $175,000 as a result of his breach. In response, Potter argues that the rights under the Settlement Agreement were not transferred to BHB as part of the prior creditors' assignments and therefore BHB cannot enforce any potential breach by Potter, that he is not in default because he was not notified of the assignments, and that a genuine dispute exists as to whether the balance is $175,000 or, as he claims, $174,000.

A. Assignment

Potter first argues that GE Capital's rights under the Settlement Agreement with respect to Potter were not assigned to BHB through the Assignment and Transfer Acknowledgement. He seems to take issue with the fact that the term "Settlement Agreement" is not listed in the collection of documents defined as the "Financing Documents" in the documents.

A "valid assignment may be made by any words or acts which fairly indicate an intention to make the assignee the owner of a claim." Kagan v. Wattendorf & Co., Inc., 3 N.E. 2d 275, 279 (Mass. 1936); accord In re Computer Eng'g Assocs., Inc., 337 F.3d 38, 46 (1st Cir. 2003). "[N]o specific or magic words are necessary for its formation." In re Computer Eng'g Assocs., 337 F.3d at 46.

Here, the language of the two documents is broadly worded. For instance, GE Capital's assignment to Transportation Truck and Trailer Solutions included "*all*" of its "right, title and interests in and to" the Blue Water account, "*including without limitation*, *all* documents, loans, leases, security agreements, or other instrument, *together with* any promissory notes, guaranties, property rights, other instruments related thereto, and other writings *in any way relating*" to the account, "*all* property and property rights owned by Assignor in connection with its interests in the Assigned Accounts, and property and property rights held by Assignor as collateral for either

or both of the payment and performance of certain obligations under the Financing Documents." (White Aff. Ex. A (emphasis added).) The Transfer Acknowledgment contains substantially the same language. This broad language manifests an intention to transfer all interests in the listed account to the assignee, including the rights under the Settlement Agreement.

B. Notice

Potter next argues that he is not in default because he did not receive notice of the assignments as required by Massachusetts General Laws Chapter 106, Section 9-406(a). Potter's reliance on § 9-406(a) is misplaced. That statute does not mandate that an account debtor be notified of an assignment; rather, the notice provision in § 9-406(a) "provides the general rule concerning an account debtor's right to pay the assignor until the account debtor receives appropriate notification." M.G.L. ch. 106, § 9-406(a), cmt. 2. Here, the undisputed facts show that Potter paid neither the assignor nor the assignee starting in the summer of 2016.

Potter also contends he is not in default because BHB did not provide proper notice of default when notice was sent only to his old address and not to his updated address or to his attorney. However, after Potter failed to remit any required installment payment beginning in the summer of 2016, BHB provided written notice of default as required under the terms of the Settlement Agreement in August 2017 when Attorney Domestico mailed via certified mail a demand letter to Potter at 8 Marshall Way with a copy to Attorney Bodoff. Notice given in that manner was therefore provided "in the manner and at the address set forth" in the Agreement. (White Aff. Ex. B ¶ 5.) Although Potter claims he "advised" Domestico that he moved to a new address in the summer of 2016, he does not offer any evidence from which a jury could find that "such other address" was "provided to [BHB] *in writing*" as required by the Agreement. (Id. ¶ 10 (emphasis added).) Oral notice is insufficient. See, e.g., Computune, Inc. v. Tocio, 691 N.E. 2d

7

994, 995, 997 (Mass. App. Ct. 1998) (finding that defendant lessor's oral request for materials to be sent to new address did not comply with lease provision that notices be sent to the address specified in the lease "or to such other address as the lessors may from time to time advise in writing"); cf. Fed. Fin. Grp., Inc. v. Logan, 767 N.E. 2d 1135, at *1 (Mass. App. Ct. 2002) (table) (finding that defendant failed to provide written notice of an address change as required by the notice provision in promissory note and bank was entitled to rely on that provision in effecting service at address contained therein).

C. Balance

Finally, Potter attempts to create a disputed issue of material fact by claiming in his affidavit that the "amount remaining unpaid pursuant to the Settlement Agreement is $174,000, not the $175,000 indicated by the Plaintiff." (Potter Aff. ¶ 18.) The general assertion, uncorroborated by any additional reliable evidence, is insufficient to raise a genuine dispute as to the amount of liability. He has provided no bank records, check stubs, or other documents that would likely exist in support of his contention that he paid $26,000.[2] On the other hand, BHB has submitted an Accounting Balance Sheet, which includes check numbers, dates, and the amount of payments. The Accounting Balance Sheet, which was made in the course of regularly conducted business activities at or near the time of occurrence, shows payments in varying specified amounts and on varying specified dates for a total of $25,000, leaving a deficit of $175,000. The mere assertion of a payment total contrary to that amount "is insufficient to warrant submission of the issue to the jury in light of [BHB's] properly supported motion replete with documentary evidence

---

[2] Indeed, he states that the remaining unpaid balance is $174,000 "[b]ased on [his] records," but he does not provide any of those purported records other than the numbered list devoid of any indicia of reliability.

8

of the transaction history." See Rodrigues v. Ocwen Loan Servicing, LLC, Civil Action No. 15-14254-GAO, 2018 WL 4600645, at *1 (D. Mass. Sept. 24, 2018).

Accordingly, Potter has failed to show the existence of any genuine issue of material fact and BHB is entitled to judgment as a matter of law on its breach of contract claim.

## III. Conclusion

For the foregoing reasons, the Motion of the Plaintiff BMO Harris Bank N.A. for Summary Judgment Against Daniel A. Potter (dkt. no. 21) is GRANTED and judgment shall enter in favor of BHB. Within seven days of this Opinion and Order, BHB shall submit a proposed form of judgment.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge